376 F.2d 255
 Robert E. MILLER and Jeanne M. Miller, (Jeanne M. Miller and Robert L. Kester, Substituting in the Place and Stead of Robert E. Miller, Deceased), Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
 No. 23290.
 United States Court of Appeals Fifth Circuit.
 April 4, 1967.
 
 Roger L. Davis, Fort Lauderdale, Fla., Herbert Johnson, Atlanta, Ga., for petitioners.
 Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Lester Uretz, Chief Counsel, I.R.S., Charles Owen Johnson, Atty., I.R.S., Harry Marselli, Melva M. Graney, Stephen H. Paley, Attys., Dept. of Justice, Washington, D. C., for respondent.
 Before BROWN, MOORE,* and BELL, Circuit Judges.
 LEONARD P. MOORE, Circuit Judge.
 
 
 1
 Petitioners, Robert E. Miller (Miller) and Jeanne M. Miller, petition for a redetermination of an income tax deficiency of $30,629.54 for the year 1957, as adjudged in a decision of the Tax Court. We affirm the Tax Court's decision.
 
 
 2
 From 1947 to sometime in 1955, Miller was a partner in a partnership, Weller Manufacturing Company (the Company), having in 1955 a 20% interest therein. Desirous of retiring from the Company, Miller retained an accountant, who with Miller's attorney and Miller met with representatives of the partnership to discuss the terms of an agreement to this effect. There were four primary items involved: (1) Miller's capital interest; (2) a sum to meet his desire to share in the Company's earnings for the next five years and to reflect his proportionate interest in the Company's patents until a certain litigation was terminated; (3) a percentage in any recovery in the patent litigation then pending in the Seventh Circuit; and (4) any sum due Miller as a result of any adjustment after an examination by the Internal Revenue Service.
 
 
 3
 A written agreement was prepared by Miller's attorney, which stated Miller's capital interest as $121,007.17. This item is not in issue.
 
 
 4
 The Company also agreed to pay Miller $15,000 per year for five years commencing February 1, 1956 "in consideration of past services to the partnership." This payment, Miller claims, should have been taxed as capital gain and relies on Section 736(b) of the Internal Revenue Code of 1954; the Commissioner claims that this item was income taxable as such within the meaning of Section 736(a).
 
 
 5
 Miller would characterize the $75,000 payment as reflecting the value of the patents in excess of the figures therefor shown on the Company's books. The facts belie this argument. Miller's attorney advised him that the five annual $15,000 guaranteed payments would be ordinary income. Miller executed Form W-4 (employee's withholding exemption certificate); the Company withheld the tax on the first $15,000 payment; and the Company deducted the $15,000 payments (the 1957 payment plus the last three payments at a discounted rate) on its return for the fiscal year ending April 30, 1957.
 
 
 6
 The Company's balance sheet as of January 31, 1955, shows Miller's net worth in the Company as $121,644.26. On the balance sheet patents are set forth as $1,422.17. The patent suit is not listed either as an asset or a liability. In 1956 an award of $250,000 was affirmed. Miller received $38,492.19 as his agreed share of the recovery. The Tax Court held that this amount represented "his [Miller's] share of distributive partnership income, received to compensate it for loss of earnings during that period." Miller argues that the lawsuit was a partnership asset; that he sold his interest therein; and that a capital gain resulted. However, the Company did not sell the patents; to the contrary, it received damages for loss of income.
 
 
 7
 Only items representing "capital interest" may be treated as capital gain by a retiring partner. See U.S. Code, Congressional and Administrative News, 1954, Vol. 3, pp. 4098, 4730-1, 5037. Miller, his attorney and accountant negotiated the agreement around the bargaining table. He must have been aware of the uncertainties of litigation because Miller agreed to pay 15% of any award or costs therein against the Company. As part of the bargaining, the Company agreed to guaranteed payments so as to take the tax benefits therefrom. This is evidenced by its deduction of these payments as expenses.
 
 
 8
 In summary all the assets were fully and fairly disclosed to Miller; and he had the tax advice of his own accountant and lawyer. He cannot now complain that he was unable to cause his erstwhile partners to place another and different valuation on his "capital interest."
 
 
 9
 The decision of the Tax Court is Affirmed.
 
 
 
 Notes:
 
 
 *
 Of the Second Circuit, sitting by designation